IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Robert Selest Drayton, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> Ann Hallman, *Inmate Grievance* ) <br> *Administrator Chief*; Angela Hardin, ) <br> *Inmate Grievance Administrator*; ) <br> Ms. Culbreath, *Inmate Grievance* ) <br> *Coordinator McCormick Correctional*; ) <br> Ms. Jenkins, *Inmate Grievance* ) <br> *Coordinator Lieber Correctional*, ) <br> Ms. Gray, *Mental Health Counselor* ) <br> *McCormick Correctional*; Mr. Williams, ) <br> *Mental Health Counselor McCormick* ) <br> *Correctional*; Nurse Garcia, *McCormick* ) <br> *Correctional Inst.*; Nurse Andrews, ) <br> *Health Care Administrator McCormick*; ) <br> Ms. Franklin, *Mailroom McCormick* ) <br> *Correctional*; Ms. Glidewell, *Disciplinary* ) <br> *Hearing Officer McCormick*; and ) <br> Cpl Young, *SMU Carrier McCormick*, ) <br> ) <br> Defendants. ) | Civil Action No.2:12-1498-DCN-BHH <br><br> **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

     The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon two motions filed by the Plaintiff: (a) the Motion for Preliminary Injunction/Motion for Temporary Restraining Order (Dkt. No. 16), and (b) the Motion for Temporary Restraining Order/Motion for Preliminary Injunction (Dkt. No. 25).

     Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

     The Plaintiff brought this action on or about May 29, 2012. (See Dkt. No. 1.) Plaintiff filed the first Motion for Preliminary Injunction/Motion for Temporary Restraining Order on

or about July 8, 2012. (Dkt. No. 16.) Plaintiff filed his second Motion for Temporary Restraining Order/Motion for Preliminary Injunction on or about July 25, 2012. (Dkt. No. 25.) Defendants filed a Response in Opposition to both motions on September 21, 2012. (Dkt. No. 34; Dkt. No. 35.)

In his first Motion for Preliminary Injunction/Motion for Temporary Restraining Order, Plaintiff complains that he has been subjected to retaliation since filing the instant lawsuit. (See generally Dkt. No. 16.) Plaintiff asserts that after he filed the case *sub judice*, he suffered an eye injury and went to medical, where he was seen by Defendant Nurse Andrews. (Dkt. No. 16 at 1 of 4.) According to Plaintiff, when he saw Andrews at sick call, his eye was swollen shut and had a "blood clot around the white of the eye," his vision was blurred, and he was unable to eat properly because he could not open his mouth. (Id.) Plaintiff states that Defendant Andrews "wouldn't do anything for [Plaintiff] saying that it would heal." (Id.) Plaintiff asserts that Defendant Andrews said Plaintiff would have an X-ray of the jaw to make sure it was not broken but that Plaintiff's jaw was never X-rayed. (Id.) Plaintiff states that he went to sick call nearly everyday, but "[i]t's been over a month," and Plaintiff has not seen the doctor or had an X-ray. (Id.) Plaintiff also complains about being required to keep medicine on his person ("KOP"), when Plaintiff would be "more comfortable" receiving his medicine dose by dose. (Id. at 2 of 4.)

Plaintiff further asserts in his first Motion for Preliminary Injunction/Motion for Temporary Restraining Order that he has not been allowed his legal box while on lock-up, despite the fact that "[u]sually when a person comes to lock-up they are allowed their legal box and whatever legal materials they have . . . ." (Id.) Plaintiff states, "[S]ince starting this lawsuit, I've been retaliated against by officers holding my legal property knowing I have pending deadlines to meet and that all my legal documents, evidence, exhibits, affidavits,

2

etc. needed to do my law work is in my legal box." (Id. at 3 of 4.) Plaintiff complains that his legal mail has been opened outside of his presence. (Id.)

Plaintiff's second Motion for Temporary Restraining Order/Motion for Preliminary Injunction repeats many of the allegations contained in his first motion. (See Dkt. No. 25.) Plaintiff complains that he is still being denied his legal box. (Dkt. No. 25 at 1 of 2.) He states, "Plaintiff is sure that this is all being done intentionally to prevent Plaintiff from effectively filing his case and restricting his access to courts, in hopes that Plaintiff, who[] is due to be discharged from [the] South Carolina Dept. of Correction[s] in December, will not pursue the case further once released." (Id.)

Defendants filed a Response in Opposition to both of Plaintiff's motions on September 21, 2012. (Dkt. No. 34; Dkt. No. 35.) Defendants note that while Plaintiff "addresses at length issues concerning medical care and also claims that he is being denied access to the courts, [he] does not state specifically the relief he requests." (Dkt. No. 34 at 2.) Defendants attached the Affidavit of Nadine Pridgen to their Response; Ms. Pridgen, the Director of Health Information Resources at the South Carolina Department of Corrections ("SCDC"), attached some of Plaintiff's medical records to her Affidavit. (See Dkt. No. 34-1.) Defendants also state that while Ms. Young acknowledges Plaintiff requested his legal materials shortly after being placed in SMU on June 21, 2012, Plaintiff had–at the time of the Response–been provided with his legal materials. (Dkt. No. 34 at 4.)

Plaintiff filed various replies. (See Dkt. No. 37; Dkt. No. 40.) In one of his replies, Plaintiff states that Defendants' Response is misleading because "[i]t wasn't until Plaintiff was placed in SMU (lock-up) that his sick call requests were ignored." (Dkt. No. 37 at 1 of 8.) Plaintiff asserts he was only seen once during August, though he submitted at least fifteen sick-call requests. (Id. at 2 of 8.) Plaintiff complains that since the filing of this lawsuit, there have been "four incidents where nurses have either dropped his blood pressure

medication, or forgot his blood pressure medication, and have failed to bring it back." (Id. at 4 of 8.)

Traditionally, a preliminary injunction "protect[s] the status quo . . . to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litigation, 333 F.3d 517, 525 (4th Cir. 2003) (abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006)). In contrast, mandatory preliminary injunctions "generally do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Id. at 526 (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)). "[A] mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." Id. A preliminary injunction is "an extraordinary remedy never awarded as of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). To obtain a temporary restraining order ("TRO") or preliminary injunction, a plaintiff must show:

(1) that he is likely to succeed on the merits,

(2) that he is likely to suffer irreparable harm in the absence of preliminary relief,

(3) that the balance of equities tips in his favor, and

(4) that an injunction is in the public interest.

Id. at 20.

The undersigned recommends denying Plaintiff's first Motion for Preliminary Injunction/Motion for Temporary Restraining Order (Dkt. No. 16) and denying Plaintiff's second Motion for Temporary Restraining Order/Motion for Preliminary Injunction (Dkt. No. 25). In Taylor v. Freeman, 34 F.3d 266 (4th Cir. 1994), the Fourth Circuit considered a

4

district court's issuance of a mandatory injunction ordering prison officials to take specific actions–related to decreasing the inmate population at North Carolina's Morrison Youth Institution–by certain dates. See Taylor, 34 F.3d 266. Vacating the district court's order, the Fourth Circuit stated,

> It is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities. As the District of Columbia Circuit observed in Inmates of Occoquan v. Barry, 844 F.2d 828 (D.C.Cir.1988), "in carrying out their remedial task, courts are not to be in the business of running prisons. The cases make it plain that questions of prison administration are to be left to the discretion of prison administrators." Id. at 841 . . . .

Taylor, 34 F.3d at 268. The Fourth Circuit further cautioned that "[e]ven when there has been a finding on the merits that unconstitutional conditions exist, federal courts should proceed cautiously and incrementally in ordering remediation so as not to assume the role of prison administrators." Id. at 269.

Although Taylor involved the overcrowding of prisons, the teachings are applicable, as there is a clear comity concern in the instant case. See Taylor, 34 F.3d at 268-69; see also Preiser v. Rodriguez, 411 U.S. 475, 491-92 (1973). Injunctive relief is not appropriate in the instant case because Plaintiff has failed to show that each of the four Winter factors supports granting relief. See Winter, 555 U.S. at 20; see also Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991) (noting that the plaintiff "bears the burden of establishing that each of these factors supports granting the injunction" (quoting Technical Publishing Co. v. Lebhar-Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984))).

As noted above, Plaintiff complains in his motions about medical care and access to his legal materials. Defendants acknowledge in their Response that Plaintiff was denied his

legal materials initially upon being placed in lock-up. (Dkt. No. 34 at 4.) However, Plaintiff's legal materials had been returned to him by the time Defendants filed their Response. (Id.) Because his legal materials have been returned to him, Plaintiff is unable to show that he will be irreparably harmed.[1] See, e.g., Tillery v. Hayman, No. 07-2662 (MLC), 2008 WL 5416392, at *3 (D.N.J. Dec. 22, 2008).

Nor do Plaintiff's complaints related to his medical care warrant a TRO or preliminary injunction. Although Plaintiff is unhappy with the medical care he is receiving, Plaintiff has not shown that he is likely to prevail on the merits. In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted). It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999). In addition, "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). While Plaintiff believes he should have been seen more often, the fact that Plaintiff alleges he was seen only one time in August is not an extraordinary circumstance warranting injunctive relief.[2] See White v. Goff, 348 Fed. App'x 366 (10th Cir. 2006) (no

---

[1] The undersigned further notes that Plaintiff has been able to file many documents and motions while this case has been pending, so it appears no injunctive relief is warranted or required.

[2] The undersigned notes that Plaintiff's medical records indicate he was seen on August 1, 2012, at the KCI Ophthalmology Clinic, and on August 15, 2012, sick call at McCormick Correctional Institution. (Dkt. No. 34-1.) The sick call notes from August 15, 2012, do not indicate any complaints about vision abnormalities or jaw pain. Rather, the notes indicate that Plaintiff was suffering from nausea and diarrhea, and that Plaintiff suspected he had food poisoning. (Id. at 2 of 7.)

6

abuse of discretion in denying motion for preliminary injunction where the record showed the plaintiff was receiving medical care but simply disagreed with the course of treatment).

## CONCLUSION

Wherefore, it is RECOMMENDED that Plaintiff's Motion for Preliminary Injunction/Motion for Temporary Restraining Order (Dkt. No. 16) be DENIED. It is further RECOMMENDED that Plaintiff's Motion for Temporary Restraining Order/Motion for Preliminary Injunction (Dkt. No. 25) be DENIED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 17, 2013
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).